**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **MELINDA WILSON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE** |
| **v.** | : | **NO. 1:05-CV-2617-AJB** |
| | : | |
| **JO ANNE BARNHART,** | : | |
| **Commissioner of Social** | : | |
| **Security Administration,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>OPINION AND ORDER</u>[1]

Plaintiff Melinda Wilson brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under the Social Security Act ("the Act").[2]   For the reasons set forth herein, the undersigned

---

[1]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73.  [Docs. 12, 14]. Therefore, this Order constitutes a final Order of the Court.

[2]    Title II of the Social Security Act provides for federal DIB.  42 U.S.C. § 401 *et seq.*  Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for supplemental security income benefits for the disabled.  Title XVI claims are not

**REVERSES** the Commissioner's decision to deny benefits, and **REMANDS** this matter to the Commissioner for further consideration of Plaintiff's claims.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for SSI and DIB on October 21, 2002, alleging disability commencing on March 25, 2002.  [Record (hereinafter "R") 55-57, 234-37].  Plaintiff's application was denied initially and on reconsideration.  [R27-30, 34-37].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R38].  An evidentiary hearing was held on June 16, 2004.  [R246-64].  At the hearing, Plaintiff indicated that she was seeking a closed period of benefits from December 8, 2001, to January 13, 2003.  [R248].  The ALJ issued a decision on September 8, 2004, denying Plaintiff's claims on the ground that she had not been under a "disability" as defined by the Act.  [R15-24].  Plaintiff then sought review by the Appeals Council.  [R7-14].

---

tied to the attainment of a particular period of insurance disability. *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).  The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985).  Under 42 U.S.C. § 1383(c)(3), the judicial provisions of 42 U.S.C. § 405(g) are fully applicable to claims for SSI.  In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI.  However, different statutes and regulations apply to each type of claim.  Therefore, to the extent that the Court cites to SSI cases, statutes, or regulations, they are equally applicable to Plaintiff's DIB claims.

2

On July 22, 2005, the Appeals Council denied Plaintiff's request for review.  [R4-6].

Plaintiff then filed an action in this Court on September 22, 2005, seeking review of the

Commissioner's decision.  [Doc. 2].  The answer and transcript were filed on April 28,

2006.  [Docs. 7-8].  The matter is now before the Court upon the administrative record,

the parties' pleadings and briefs, and oral argument.  The case is ripe for review

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    STATEMENT OF FACTS

### A.    *Medical Records*[3]

Plaintiff saw Dr. Carol Aitcheson on October 9, 2000, at the Piedmont

Physician's Group ("Dr. Aitcheson's office") concerning knee pain among other

problems.  Doctor Aitcheson reported that Plaintiff's knees started aching badly over

the prior year.  Plaintiff reported that her knee became stiff and would hurt when she

stood still.  [R166].  At the October 9 visit, Plaintiff weighed 339 pounds.  She had no

depression, anxiety, or agitation.  Her right and left knees had crepitus (a crackling or

---

[3]    The Court notes that Plaintiff's name is Melinda Ann Wilson and her birthday is June 30, 1964.  [*See* R55].  Some of the medical records in the administrative record are for a Melinda P. Wilson who was born December 17, 1959. [R118-46, 148-52].  There is also a medical record for a Melinda Wilson born on July 29, 1958.  [*See* R147].  Clearly, these medical records are not those of Plaintiff, so the Court will not summarize or consider these records.

grating feeling or sound in the joints).  Dr. Aitcheson diagnosed Plaintiff with abnormal weight gain and degenerative arthritis of both knees.  [R167].

On October 24, 2000, Plaintiff visited Dr. Aitcheson complaining that her food did not digest and she had burning in the back of her throat.  At this time, Plaintiff's weight was 337 pounds, but she had no depression, anxiety, or agitation.  Plaintiff reported that her knee pain was becoming more constant.  Plaintiff also had problems with dysphagia (difficulty swallowing) and a squeezing in her chest.  Dr. Aitcheson diagnosed Plaintiff with esophageal reflux (a condition in which the backward flow of acid from the stomach causes heartburn and injury of the esophagus) along with degenerative arthritis and abnormal weight gain.  Plaintiff was prescribed Prilosec (medication to control esophageal reflux) and told to lose weight.  [R174].

During a December 7, 2000, office visit with Dr. Aitcheson, Plaintiff reported losing one pound, starting Weight Watchers, improvement in her reflux, and her knees were feeling better because it was not cold.  [R179].  Plaintiff did not have depression, anxiety, or agitation.  She had right and left knee crepitus.  Dr. Aitcheson gave the following diagnosis: improved esophageal reflux, improved degenerative arthritis of both knees, and unchanged abnormal weight gain.  Dr. Aitcheson prescribed Celebrex

4

(anti-inflammatory medication), stressed the importance of weight loss, and told Plaintiff to return in three months.  [R181].

Plaintiff saw Dr. Aitcheson on May 1, 2001, complaining of knee pain.  At this visit, Plaintiff weighed 326 pounds.  The medical note indicated that Plaintiff was divorced from her husband in March and that her husband remarried in April.  Dr. Aitcheson's assessment was as follows: improved abnormal weight gain, improved esophageal reflux, and unchanged degenerative arthritis in both knees.  Plaintiff was prescribed Celebrex and told to return in three months.  [R183].

Plaintiff saw Dr. Aitcheson on October 26, 2001, for knee pain.  She had no weight loss.  Plaintiff reported that her divorce was traumatic, but she was getting better.  There was swelling and crepitus in her right knee.  [R188].  A note from Dr. Aitcheson indicated that Plaintiff could return to work on November 11, 2001.  [R189].

Plaintiff informed Dr. Aitcheson on February 8, 2002, that she had been fired from her job and was having trouble getting around with her knee.  She stated that she cried the prior week but was trying to get a new job.  Plaintiff weighed 328 pounds.  [R191].  Dr. Aitcheson diagnosed Plaintiff with depression and prescribed Prozac (an anti-depressant).  [R192].

5

On March 15, 2002, Plaintiff called Dr. Aitcheson's office and complained that she was not sleeping well and had right knee pain. [R193]. During an April 22, 2002, office visit to Dr. Aitcheson, Plaintiff weighed 314 pounds. She had crepitus of the knee but no depression, anxiety, or agitation. Plaintiff was given samples of Nexium (medication to treat gastroesophageal reflux) and Celebrex and told to concentrate on weight loss. [R197].

A May 6, 2002, examining report from Dr. Robert Greenfield indicated that Plaintiff stood 5 feet, 4 inches tall and weighed 306 pounds. Plaintiff ambulated with a wide-based gait, but did not use an assistive device. She had a bowed right leg (genu varus deformity of 15 degrees). Plaintiff had full range of motion in her right knee but had pain throughout the range of motion. Plaintiff had a positive patellofemoral grind test with crepitus. Plaintiff also had painful range of motion in the left knee with patellofemoral crepitus with medial and lateral joint line tenderness. X-rays indicated that Plaintiff had severe tricompartmental osteoarthritis of the right knee with bow-legged deformity. The left knee was symmetric. As a result, Dr. Greenfield found that Plaintiff had osteoarthritis in her right and left knees and indicated that she needed a device to assist with ambulation. [R163].

A May 23, 2002, Physical Residual Functional Capacity Assessment by Dr. Ronald Lehman, a non-examining consultant, indicated that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for 2 to 3 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The consulting doctor indicated that Plaintiff needed a cane for distances greater that 200 feet. [R154]. The consultant arrived at these conclusions because of Plaintiff's allegations of knee pain and Plaintiff's weight of 306 pounds and her height of 5 feet, 4 inches. [R154-55]. Plaintiff could occasionally kneel, crouch, and climb ramp/stairs, but never crawl or climb ladder/rope/scaffolds. Plaintiff could frequently stoop. [R155]. Plaintiff did not have visual, manipulative, communicative, or environmental limitations. [R156-57]. The consultant concluded that Plaintiff's symptoms were attributable to a medically determinable impairment and noted that Plaintiff could not bend her knees, move her knees, stand long, or walk long because of her knees, obesity, and degenerative joint disorder. [R158].

On September 11, 2002, Plaintiff called Dr. Aitcheson's office asking for a note that stated she could work but that she had to work while sitting down, and Dr. Aitcheson complied. [R226-27]. On March 27, 2003, Plaintiff called Dr. Aitcheson's office seeking Diclofenac (anti-inflammatory medication) for her knee

pain, which was getting worse.  Plaintiff was told to come to the office for Celebrex samples and was given a prescription for Diclofenac.  [R228].  On August 6, 2003, Plaintiff called Dr. Aitcheson's office complaining of arthritis and difficulty walking. She had been taking Voltaren (anti-inflammatory medication) but asked to be given Celebrex.  Plaintiff was prescribed Celebrex.  [R231].

On March 10, 2004, upon Plaintiff's request, Dr. Aitcheson's office gave Plaintiff a referral to Dr. Jeff Nugent for her knee pain.  [R221].  Plaintiff was seen by Dr. Nugent on March 25, 2004.  At that time, she weighed 279 pounds.  X-rays of Plaintiff's knees found "very severe" osteoarthritis with subluxation (abnormal movement of one of the bones that comprise a joint) of both knees.  Plaintiff was diagnosed with exogenous obesity (obesity caused by over eating) and severe bilateral osteoarthritis, her right knee worse than her left.  Dr. Nugent recommended that Plaintiff have total knee replacement and that she lose over 100 pounds after the operation.  She was scheduled for surgery on her right knee on April 13, 2004.  [R210-11].

Plaintiff visited Dr. Aitcheson's office on April 9, 2004, for a pre-operation exam for right knee replacement.  Plaintiff weighed 284 pounds.  [R218].  Plaintiff had bilateral crepitus and knee pain, right knee swelling and no depression, anxiety, and

8

memory loss. [R220]. Plaintiff was taking Niferex (an anti-inflammatory medication) and Ultracet (medication used to relieve moderate to moderately severe pain). [R221].

Plaintiff underwent a right total knee arthroplasty (surgical repair of the knee) on April 13, 2004. [R208]. On April 22, 2004, Plaintiff had a follow-up appointment and was diagnosed with hypesthesia (decreased sensitivity to touch or pain) around the incision site, which would improve, and mild edema (abnormally large amounts of fluid leading to swelling) of the right foot and leg. [R207]. On April 29, Plaintiff complained of pain in her left knee. Dr. Nugent found that Plaintiff's right knee was rapidly improving, and he wanted her to continue rehabilitation of her right knee for three months before doing any procedure on the left knee. [R206].

B.   *June 16, 2004, Evidentiary Hearing Before the ALJ*

At the June 2004 evidentiary hearing, Plaintiff's attorney stated that she was seeking a closed period of benefits from December 8, 2001, to January 13, 2003. [R248]. Plaintiff was born June 30, 1964, and was 39 years old at the time of the hearing. She completed high school and received vocational training as a nursing assistant. [R249]. At the time of the hearing, Plaintiff stood 5 feet 3 inches tall and weighed 272 pounds. [R256]. Plaintiff had worked as a para-transit driver for MARTA between January 13, 2003, and April 8, 2004. She was on short term

9

disability because of her knee-replacement surgery.  [R249-50].  Plaintiff's previous job was as a receptionist and secretary at Grady Health Systems between May 5, 2000, and December 8, 2001.   Plaintiff also worked at IBM as a customer service representative from February 1997 to October 1999.  [R250].

As a receptionist at Grady, Plaintiff had to walk two to three blocks to check mail and deliver memos.  [R251-52].  It would take Plaintiff between 15 and 30 minutes to walk these three blocks because of knee pain.  Plaintiff was terminated because of how slow she was.  [R252].  At the time of her termination, Plaintiff had to stop every four houses when she walked to the bus stop.  [R257].  Plaintiff cared for her two children with assistance from her older daughter.  [R259-60].  Plaintiff also would place a chair at every location where she performed a chore.  [R260].

Plaintiff attempted to find employment after Grady, but she was unable to find suitable employment.  [R253].  Plaintiff became employed with MARTA after running into a high school friend who worked at MARTA and encouraged Plaintiff to apply. Plaintiff applied to MARTA in August 2002 and "pretty much harassed" MARTA until November when MARTA started the process to give her the job.  [R254].

Plaintiff indicated that when she saw Dr. Nugent, she had pain walking.  She did not have problems with sitting other than getting stiff, and she would shift all day trying

to get comfortable. After sitting for a long time, Plaintiff would get so stiff that she would have difficulty standing. [R255]. Plaintiff testified that her weight was not the cause of her knee problems. [R256].

The vocational expert ("VE") testified that Plaintiff's past work as a receptionist and customer service representative were semiskilled and sedentary. Plaintiff's past work as an office clerk and mail clerk were light and semiskilled, and her work as a nursing assistant was medium and semiskilled. The VE also stated that Plaintiff's work at Grady carrying certain items might also serve as light work because of the lifting. [R262-63]. The VE stated that if Plaintiff was classified for a full range of sedentary work, she could perform some past work. [R263].

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact:

1.   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity during the time period in consideration.

3.   The claimant's osteoarthritis of both knees, and knee pain are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

11

4.     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.     The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The claimant had the residual functional capacity to engage in and perform a full range of sedentary work.

7.     The claimant's past relevant work as receptionist, sedentary semi-skilled work and as a customer service representative, sedentary semi-skilled work did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8.     The claimant's medically determinable osteoarthritis of both knees and knee pain do not prevent the claimant from performing her past relevant work.

9.     The claimant was not under a "disability" as defined in the Social Security Act, at any time from December 8, 2001 though January 13, 2003 (20 CFR §§ 404.1520(f) and 416.920(f)).

[R23].

The ALJ explained that the medical evidence indicated that claimant's bilateral knee osteoarthritis and knee pain were severe, but claimant's depression was not severe because there was no evidence of on-going treatment for depression and Plaintiff denied having depression on December 7, 2000. [R21-22]. The ALJ also found that

12

Plaintiff's testimony was not credible because the medical evidence did not support the severity of impairments that Plaintiff alleged having between December 8, 2001, and January 13, 2003.  As a result, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to engage in and perform a full range of sedentary work during December 2001 and January 2003.  [R22].  With this RFC, the ALJ found that Plaintiff could perform her past relevant work as receptionist and customer service representative or other sedentary jobs in the national economy.  [R22-23].

## IV.    STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in

13

any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a).  The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments which significantly limits his ability to perform basic work-related activities.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education and work experience.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  At step four, if the claimant is unable to

14

prove the existence of a listed impairment, he must prove that the impairment prevents performance of past relevant work.    *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.  *Doughty*, 245 F.3d at 1278 n.2.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.    *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).   Despite the shifting of burdens at step five, the overall burden rests upon the claimant to prove that she is unable to engage in any substantial gainful activity that exists in the national economy.  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

15

## V.    SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.  Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.  *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980).  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  If supported by substantial evidence and proper legal standards were applied, the findings of the Commissioner are conclusive.  *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether

16

substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI. CLAIMS OF ERROR

Plaintiff claims that the ALJ erred for the following three reasons. First, she argues that the ALJ failed to consider her obesity in determining whether the obesity was a severe impairment at step 2 of the evaluation process, and in formulating the RFC at step 4. [Doc. 15 at 7]. Plaintiff explains that the RFC determination improperly omitted consideration of obesity because Plaintiff was clearly obese and the ALJ failed to discuss Plaintiff's obesity or its effect on her RFC. [*Id.* at 8-9]. Second, Plaintiff contends that the ALJ erred by failing to perform a function-by-function analysis of Plaintiff's limitations as required by Social Security Ruling ("SSR") 96-8p. Plaintiff argues that the RFC must adequately describe all of a claimant's limitations, which the

17

ALJ omitted from his analysis.  [*Id.* at 9-11].  Third, Plaintiff argues that the ALJ erred by not including limitations from Plaintiff's depression in the RFC.  [*Id.* at 11-13].

The Commissioner first responds that the ALJ properly considered Plaintiff's obesity.  At step 2 of the evaluation process, the Commissioner contends that there was no error because the ALJ already found that Plaintiff suffered from severe impairments, so the specific impairments found to be severe at step 2 are irrelevant.  [Doc. 17 at 10-11].  Also, the Commissioner argues that any error at step 2 was harmless because the ALJ considered Plaintiff's obesity in his RFC determination and Plaintiff failed to show that her obesity caused additional limitations that prevented her from performing sedentary work or past relevant work.  [*Id.* at 11-12].  The Commissioner asserts that the following evidence supports the ALJ: (1) Plaintiff worked for years despite her weight; (2) Dr. Aitcheson indicated that Plaintiff could work a sedentary job and would only be affected by her knee; and (3) Plaintiff failed to lose weight despite recommendations of her doctor.  [*Id.* at 12-14].  The Commissioner then argues that even if Plaintiff's obesity were found to be severe at step 2, she failed to show that her obesity caused additional limitations on her ability to work.  [*Id.* at 14].

The Commissioner next responds that substantial evidence supports the ALJ's RFC determination because there is no evidence that Plaintiff was unable to perform

18

the exertional demands of sedentary work. [*Id.* at 16-17]. The Commissioner contends that given the definition of sedentary work and the substantial evidence supporting the RFC, the ALJ did not need to discuss Plaintiff's ability to perform each of the exertional demands of sedentary work, and to require the ALJ to do so would merely be a waste of resources. [*Id.* at 17]. The Commissioner further notes that Plaintiff failed to show that she could not perform her past relevant work. [*Id.* at 18]. The Commissioner finally responds that Plaintiff did not have a severe mental impairment or work-related mental limitations. [*Id.* at 19-24].

## VII.  DISCUSSION

### A.    *Plaintiff's Depression*

At oral argument before this Court, Plaintiff's counsel indicated that he waived his arguments concerning Plaintiff's depression. As a result, the Court will not discuss whether the ALJ erred in finding that Plaintiff's depression created any RFC limitations.

### B.    *Plaintiff's Obesity*

#### 1.    *Severity of Plaintiff's Obesity*

The Commissioner considers at Step 2 whether a claimant has an impairment that is severe and that meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii),

19

416.920(a)(4)(ii).  Obesity is a severe impairment "when, alone or in combination with another medically determinable physical . . . impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  SSR 02-1p. Basic work activities are "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling.  20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1).  Obesity is not severe "only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on an individual's ability to do basic work activities."  SSR 02-1p; *see also Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) ("An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.").  The Eleventh Circuit and other circuits have described the severity standard as "de minimis."  *See Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir. 1987); *see also  Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("Step two, then, is a de minimis screening device [used] to dispose of groundless claims . . . .") (citations and internal quotation marks omitted); *Williamson v. Barnhart*, 350 F.3d 1097, 1100

20

(10th Cir. 2003) ("We have characterized this showing as 'de minimis,' but the mere presence of a condition is not sufficient to make a step-two showing.").

The Court concludes that the ALJ erred by failing to evaluate whether Plaintiff's obesity was a severe impairment.  The medical evidence clearly shows that Plaintiff was obese between December 8, 2001, and January 13, 2003.  Plaintiff stood 5 feet 4 inches and weighed 328 pounds on February 8, 2002, [R191], 314 pounds on April 22, 2002, [R193], and 306 pounds on May 6, 2002, [R163].  Plaintiff was specifically diagnosed with obesity on October 9, 2000, when she weighed 339 pounds, [R167], and on March 25, 2004, when she weighed 279 pounds, [R210-11].  Although the ALJ noted that Plaintiff was diagnosed as obese, the ALJ failed to discuss whether this obesity was a severe impairment.  [*See* R21-22].  The ALJ's failure to consider Plaintiff's obesity at Step 2 is error.  *See* SSR 02-1p (indicating that the Commissioner "will do an *individualized assessment* of the impact of obesity on an individual's functioning when deciding whether the impairment is severe") (emphasis added).

The Court is unpersuaded by the Commissioner's citation to *Council v. Barnhart*, No. 04-13128 (11th Cir. Dec. 28, 2004), in arguing that this error was harmless. In *Council*, the Eleventh Circuit rejected claimant's argument that the ALJ failed to consider her mental impairment at step 2 of the evaluation process because the ALJ

AO 72A
(Rev.8/82)

found that claimant "had an impairment or combination of impairments considered 'severe.'" *Council*, No. 04-13128, slip op. at 4. By making this finding, the Eleventh Circuit determined that the ALJ implicitly considered claimant's mental impairment. In the instant case, the ALJ did not make any finding that the combination of Plaintiff's impairments was severe. Instead, the ALJ found that Plaintiff's depression was not severe but her bilateral knee osteoarthritis and knee pain were "'severe' within the meaning of the Regulations." [R21]. Thus, the ALJ in the instant case failed to make any findings concerning the severity of the combination of Plaintiff's impairments. As a result, the case is distinguishable from *Council* in that the ALJ never made an implicit finding that Plaintiff's obesity alone or in combination with her other impairments was severe.[4]

The Court recognizes, however, that courts have found an ALJ's error at step 2 to be harmless where evidence shows that an impairment was considered at later stages

---

[4]    The Court notes that the Commissioner's reliance on *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987), seems to support Plaintiff's position. In *Jamison*, the Eleventh Circuit remanded the case because the ALJ's opinion failed to indicate that "if at any step in his sequential analysis he considered the claimant's entire medical condition." *Id.* The instant case is similar in that the ALJ's opinion failed to indicate that he considered Plaintiff's obesity in evaluating its severity at step 2 of the evaluation process. Also, as discussed below, the ALJ's opinion fails to indicate that Plaintiff's obesity was considered in determining the RFC at step 4.

of the evaluation process.  *See Burch v. Barnhart*, 400 F.3d 676, 682-84 (9th Cir. 2005) (holding ALJ's failure to specifically find claimant's obesity was not severe at step 2 was harmless error under the facts of the case); *Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1054 (E.D. Wis. 2005) ("[T]he question becomes whether the ALJ's error at step two affected the RFC determination and thus the outcome of the case.").  The Court turns, therefore, to whether the ALJ considered Plaintiff's obesity in fashioning the RFC, which would thereby render the error at step 2 harmless.

    *3.    Obesity and the RFC*

The residual functional capacity is the most activity in a work setting that a claimant can still do despite her limitations.   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In assessing the RFC, the ALJ is to use "all of the relevant medical and other evidence."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  When obesity is a medically determinable impairment, the ALJ must consider the functional limitations resulting from obesity in making an RFC assessment.  SSR 02-1p.  The areas where obesity may cause functional limitations include: (1) social functioning; (2) exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling; (3) postural functions such as climbing, balancing, stooping, and crouching; and (4) the

23

ability to manipulate objects, perform routine movement, perform necessary physical activity, and tolerate extreme heat, humidity, or hazards.  Also, "[t]he combined effects of obesity and other impairments may be greater than . . . expected without obesity." The ALJ must explain how he reached his "conclusions on whether obesity caused any physical . . . limitations."  *Id.*

The Court concludes that the ALJ erred in making the RFC determination.  There is absolutely no evidence that the ALJ considered Plaintiff's obesity in determining that Plaintiff had the RFC to engage in a full range of sedentary work.  [*See* R22].  Instead, the ALJ indicated that based on the medical evidence, he found Plaintiff's testimony to be less than credible, and he found that Plaintiff's depression was not severe.  Based on these findings, the ALJ then determined that Plaintiff had an RFC to perform a full range of sedentary work.  [*Id.*].  Absent from this analysis is any discussion of Plaintiff's obesity and how it affected Plaintiff's functioning.  As a result, the Court cannot determine that the ALJ applied the proper standard in making the RFC determination in light of the existence of Plaintiff's obesity and the ALJ's failure to even suggest that he considered obesity.  *See* SSR 02-1p ("[W]e will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.").

24

The Court recognizes that evidence supports the ALJ's RFC determination that

Plaintiff could perform sedentary work.[5]  For instance, the report of Dr. Lehman, the

non-examining consultant, supports the ALJ's finding that Plaintiff could perform a full

range of sedentary work.  [R153-61].[6]  Dr. Lehman indicated that, based on Plaintiff's

---

[5]    The Court is unpersuaded by the Commissioner's argument that Plaintiff's failure to lose weight despite recommendations of Dr. Aitcheson undermined Plaintiff's argument that she was significantly limited due to obesity.  Social Security Ruling 02-1p states that the Commissioner "will rarely use 'failure to follow prescribed treatment for obesity to deny . . . benefits."  The Commissioner must establish the following three factors to deny benefits on the basis of failure to follow treatment: (1) "the individual has an impairment(s) that meets the definition of disability"; (2) "[a] treating source has prescribed treatment that is clearly expected to restore the ability to engage in substantial gainful activity"; and (3) "the evidence shows that the individual has failed to follow prescribed treatment without a good reason."  SSR 02-1p (quoting SSR 82-59).  Plaintiff does not meet the third criteria for failure to follow treatment.  There is no evidence that Plaintiff failed to follow prescribed treatment of losing weight, [R174], without a good reason.  Instead, the evidence indicates that Plaintiff followed the prescribed treatment because she went from weighing 339 pounds in October 2000, [R167], to weighing 279 pounds in April 2004, [R211].  As a result, the Court is unpersuaded by the Commissioner's failure to follow prescribed treatment argument.

[6]    The Tenth Circuit has held an ALJ did not err in determining the RFC where "the ALJ did discuss possible ramifications of [claimant's] obesity when he addressed the lack of marked arthritic pain, joint deformity, or musculoskeletal impairment . . . [and] the consultative examination and resulting report, which took into account claimant's obesity , support[ed] the ALJ's RFC determination."  *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004).  The instant case is distinguishable.  Dr. Lehman's report may have supported the ALJ's RFC determination, but there is no indication in the ALJ's opinion that the ALJ discussed the ramifications of Plaintiff's obesity on her RFC or her other physical problems.

25

obesity and knee problems, Plaintiff: (1) could frequently lift 10 pounds, stand and/or walk 2 to 3 hours in an 8-hour work day, sit 6 hours in an 8-hour work day, and push and pull 10 pounds without a problem; (2) could frequently stoop and occasionally climb ramp/stairs, kneel, and crouch; and (3) had no manipulative, visual, communication, or environmental limitations. [R154-57]. These findings support the ALJ's conclusion that Plaintiff could perform a full range of sedentary work, which is defined as follows:

> lifting no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p; *see also* SSR 83-10; 20 C.F.R. §§ 404.1567(a), 416.967(a). Although the ALJ outlined Dr. Lehman's findings in the opinion, [R21], the ALJ did not reference Dr. Lehman's findings in describing the RFC determination, which would have suggested that the ALJ at least implicitly considered Plaintiff's obesity.

26

The Court also recognizes that Dr. Aitcheson wrote a letter on September 11, 2002, indicating that Plaintiff could work but she needed a sedentary job. [R227]. The ALJ's opinion fails, however, to refer to this letter in describing why the ALJ arrived at his RFC determination or to even mention this letter at any point in the opinion. Finally, the Court notes that Plaintiff testified that she sought work following her termination on December 8, 2001. [R253]. Again, the ALJ never mentioned this testimony at any point in the opinion. Although the ALJ's RFC determination of sedentary work has evidentiary support, the ALJ's failure to discuss the effect of Plaintiff's obesity is error. *See* SSR 02-1p.[7] The complete absence of any discussion of Plaintiff's obesity in determining the RFC indicates that the Court should wait for the ALJ to properly evaluate the RFC before concluding whether it is supported by substantial evidence. *But see Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (holding that the ALJ's failure to mention claimant's obesity was harmless error where the outcome would be the same, obesity was indirectly considered as part of the doctor's reports, and claimant did not explain how the obesity "further impaired his ability to work"); *Forte v. Barnhart*, 377 F.3d 892, 896-97 (8th Cir. 2004) (holding no

---

[7]      Even with this evidentiary support, the Court notes that, as discussed below, the ALJ erred in making the RFC assessment of sedentary work.

27

reversible error in ALJ's failure to discuss Plaintiff's obesity in evaluating the RFC because there was no evidence supporting a finding that Plaintiff's obesity caused work-related limitations) (citing *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995)).

Therefore, the Court concludes that the ALJ's failure to consider Plaintiff's obesity at Steps 2 and 4 is reversible error. *See Williams v. Barnhart*, 186 F. Supp. 2d 1192, 1198 (M.D. Ala. 2002) ("Notwithstanding the diagnoses and objective evidence supporting the claimant's other impairments, the ALJ made no express determination as to the severity of the claimant's . . . obesity.  Nor does the decision reveal the extent to which the ALJ evaluated . . . [obesity] beyond step two of the sequential evaluation process.  Accordingly, the ALJ's failure to consider or even address [obesity] as a part of his determination of severity was reversible error.").[8]  Accordingly, the Court

---

[8]     *See also Allison v. Comm'r of Soc. Sec.*, 347 F. Supp. 2d 439, 446-47 (E.D. Mich. 2004) (finding ALJ erred in failing to evaluate claimant's obesity in the ALJ's opinion); *Thomason v. Barnhart*, 344 F. Supp. 2d 1326, 1330 (N.D. Ala. 2004) (reversing the ALJ's decision in part because the ALJ failed to consider claimant's obesity); *Boston v. Barnhart*, 332 F. Supp. 2d 879, 886-87 (D. Md. 2004) (remanding the ALJ's disability determination because the ALJ failed to consider claimant's obesity); *Willoughby v. Comm'r of Soc. Sec.*, 332 F. Supp. 2d 542, 549 (W.D.N.Y. 2004) (finding that the ALJ erred by failing to consider the effect of claimant's obesity on the severity of the impairments, the RFC, and the ability to perform basic work activities); *Brown v. Barnhart*, 325 F. Supp. 2d 1265, 1272 (N.D. Ala. 2004) (reversing in part because the ALJ failed to consider claimant's obesity); *Young v. Barnhart*, 282 F. Supp. 2d 890, 897-98 (N.D. Ill. 2003) (finding error where the ALJ failed to consider claimant's obesity in making the RFC determination); *Fleming v. Barnhart*,

**REVERSES and REMANDS** for the ALJ to consider Plaintiff's obesity in making the disability determination.

     *C.*     *The Residual Functional Capacity Determination*

     As discussed above, the claimant's RFC is the most a claimant can do in a work setting despite his work limitations that are attributable to medically determinable severe and non-severe impairments. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1), 416.920(a)(4), 416.945(a)(1); SSR 96-8p. In assessing the RFC, the ALJ is to use "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The RFC assessment must also address a claimant's exertional and nonexertional capacities. SSR 96-8p. This RFC is then used in determining whether claimant can perform his past relevant work or other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(iv), (v), 416.920(a)(4)(iv), (v).

     To make an RFC assessment, the ALJ must first perform a "function-by-function assessment of the individual's physical and mental capacities." Once this initial assessment is made, the "RFC may be expressed in terms of an exertional category." The Commissioner has explained that the initial failure to make a function-by-function

_____

284 F. Supp. 2d 256, 270-72 (D. Md. 2003) (reversing the ALJ's decision where the ALJ failed to consider obesity at step 3 and in determining the RFC at step 4).

assessment of a claimant's limitations "could be critical to the outcome of a case" because the ALJ might "overlook[] some of an individual's limitations or restrictions," leading to "an incorrect use of an exertional category."  The Commissioner requires the ALJ to engage in a narrative discussion when making an RFC assessment by "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."  The ALJ must also "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence" in the record.  SSR 96-8p.

The Court concludes that the ALJ erred in assessing Plaintiff's RFC.  The ALJ's entire RFC assessment is as follows:

> Upon review of all of the medical evidence of record, as well as the testimony of the claimant at the hearing, the undersigned finds the claimant to be less than fully credible.  The medical evidence of record does not support the severity of impairments alleged by the claimant during the time period of December 8, 2001 through January 13, 2003, her requested closed period of disability.

> The medical evidence of record does not show ongoing medical treatment or hospitalization for depression and on December 7, 2000, the claimant denied any depression, anxiety or memory loss.  For these reasons, the undersigned finds the claimant's depression to be non-severe.

30

> Accordingly, the undersigned finds the claimant retained the [RFC] to engage in and perform a full range of sedentary work during the time period of December 8, 2001 through January 13, 2003.

[R22].   Notably absent from this RFC assessment is a discussion of Plaintiff's exertional and nonexertional limitations or a function-by-function analysis of Plaintiff's limitations.   The ALJ's RFC assessment is clearly contrary to the method for assessing the RFC established in Social Security Ruling 96-8p.

The Court is unpersuaded by the Commissioner's arguments that the ALJ properly made a RFC assessment for the following five reasons.   First, although the definition of a full range of sedentary work may encompass Plaintiff's limitations, Social Security Ruling 96-8p clearly states that "the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' medium,' 'heavy,' and 'very heavy' work."   Thus, the Commissioner has expressly determined that the ALJ cannot simply make an RFC assessment based on an exertional category regardless of whether the exertional category encompasses the claimant's limitations.   In the instant case, the ALJ expressed the RFC initially in terms of an exertional category, *i.e.*, Plaintiff could perform a full range of sedentary work, without describing how Plaintiff's impairments limited her exertional and nonexertional capacities.   [*See* R22]. As a result, the ALJ committed error by first expressing Plaintiff's RFC as an exertional

31

category without specifically addressing whether Plaintiff's impairments caused limitations of certain functions.

Second, the Court's reversal is not be based on the ALJ's inartful drafting of the opinion, but on the ALJ's failure to follow a specific ruling promulgated by the Commissioner concerning how to make an RFC assessment. In other words, the ALJ's opinion was not merely inartfully drafted, it was erroneously drafted. Third, the reversal and remand is not a waste of administrative resources because the ALJ's failure to first make a function-by-function assessment might have lead the ALJ to overlook some of Plaintiff's limitations or restrictions. *See* SSR 96-8p. Fourth, the Court cannot determine that the ALJ's RFC finding was supported by substantial evidence because the ALJ failed to engaged in a function-by-function analysis of the RFC. *See Jesse v. Barnhart*, 323 F. Supp. 2d 1100, 1110 n.49 (D. Kan. 2004) (citing *Alexander v. Barnhart*, 74 Fed. Appx. 23, 28 (10th Cir. Sept. 2, 2003), for the proposition that "the ALJ's RFC determination [is] not supported by substantial evidence where the ALJ failed to make a proper function-by-function analysis").

Fifth, the Court is not persuaded that Plaintiff failed to show that additional limitations existed on her ability to perform sedentary work and failed to meet her burden of proving that she could not perform past relevant work. The Court recognizes

that Plaintiff has the burden at step 4 of the evaluation process.  *See Bruet v. Barnhart*, 313 F. Supp. 2d 1338, 1340 (M.D. Fla. 2004) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  Social Security Ruling 96-8p establishes, however, certain standards for an ALJ to follow in making the RFC determination.  The ALJ failed to follow these standards.  The best course, therefore, is to remand for the ALJ to specifically show that he considered all of Plaintiff's limitations and restrictions in assessing the RFC.[9]

Accordingly, the Court **REVERSES and REMANDS** for the ALJ to follow the procedures in Social Security Ruling 96-8p in making a RFC assessment.

## VIII.  CONCLUSION

Pursuant to this Court's power to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405 (g), the Court hereby **REVERSES AND REMANDS** this case to the Commissioner for the ALJ to consider Plaintiff's obesity in evaluating

---

[9]     The Court notes that other courts have also reversed and remanded when the ALJ failed to make a function-by-function analysis in assessing the RFC.  *See e.g.*, *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208 (W.D.N.Y. 2005) ("Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence."); *Jones v. Barnhart*, 372 F. Supp. 2d 989, 1005 (S.D. Tex. 2005); *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1058 (E.D. Wis. 2005); *Jesse*, 323 F. Supp. 2d at 1109-10.

AO 72A
(Rev.8/82)

whether Plaintiff is disabled and for the ALJ to follow Social Security Ruling 96-8p in

assessing Plaintiff's RFC.

The Clerk is **DIRECTED** to enter judgment for Plaintiff.

**IT IS SO ORDERED and DIRECTED** this the 19th day of January, 2007.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)